441 So.2d 1376 (1983)
FRANKLIN COUNTY COOPERATIVE
v.
MFC SERVICES (A.A.L.).
No. 54026.
Supreme Court of Mississippi.
December 21, 1983.
John L. Maxey, II, Glenda W. Tomlinson, Cupit & Maxey, Jackson, for appellant.
James H. Herring, Herring & Self, Canton, for appellee.
Before WALKER, P.J., and BOWLING and PRATHER, JJ.
BOWLING, Justice, for the Court:
Appellant Franklin County Cooperative filed a complaint against appellee, MFC Services (MFC) alleging a breach by appellee of an oral contract for the sale of a *1377 specified quantity of soybean seed. The lower court sustained appellee's motion to dismiss under Rule 12(b)(6) of the Mississippi Rules of Civil Procedure (MRCP) and it is this action which is assigned as appellant's sole assignment of error.
On January 7, 1982, the manager of appellant telephoned appellee, talked with one Henderson, the employee of appellee who answered the phone, and received quotations on the prices of various kinds of soybean seed. Appellant thereupon placed an order for the purchase of 15,000 bushels of a designated variety of soybean seed at an agreed upon price (over $500) and delivery date. In concluding the conversation appellee's employee stated that "If there is any problem, we will get back to you." Following that initial telephone conversation, Henderson examined the notes she had made during the call and discovered that she had written down 1,500 bushels rather than 15,000 bushels. In order to confirm the fact that the order was for 15,000 bushels, Henderson telephoned the manager of appellant and received confirmation of the correct amount. Henderson closed this second telephone conversation with the statement, "O.K., we will take care of it."
The following morning Henderson informed her superior at MFC, Elmo Collum, of the receipt of appellant's oral order. Collum was unwilling to accept the offer because of its unusually large amount, and he telephoned appellant's manager to advise him that appellee would not accept appellant's offer to purchase the seed. Also on that day, appellee's general counsel, Milton Mitchell, telephoned appellant to confirm appellee's unwillingness to accept the offer.
By letter dated January 11, 1982, Mitchell wrote appellant and recounted the above facts in detail.[1] In this letter, appellee adopted the position that no contract of sale had been formed since Henderson had allegedly expressed a condition precedent to acceptance of the offer, namely procuring the approval of her superiors. In its complaint filed in the court below appellant attached this letter as an exhibit evidencing appellee's intention not to perform under the terms of the alleged contract.
MRCP 12(b)(6), the successor to the common law demurrer, provides that the defense of failure to state a claim upon which relief can be granted may, as here, be asserted by motion. We note that the comment which follows this Rule provides in pertinent part that to grant this motion "there must appear to a certainty that the plaintiff is entitled to no relief under any set of facts that could be proved in support of the claim." We are mindful of the current judicial practice favoring disposition of cases on their merits. Accordingly, we are of the opinion that the above criteria express the proper principles to be employed in passing upon a motion to dismiss under MRCP 12(b)(6).
The trial judge sustained the appellee's motion to dismiss on the basis that the alleged oral contract did not, as affirmatively pled by appellee, satisfy our statute of frauds.[2] Mississippi Code Annotated, *1378 Section 75-2-201(1) (1972), provides that a contract for the sale of goods for the price of $500 or more is not enforceable unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought. In his order sustaining the motion the trial judge emphasized the fact that Mitchell's letter not only denied there was a contract, but also referred to the telephone conversations appellee had with appellant denying the existence of a contract.
The official comment to UCC § 2-201(1) states that "all that is required is that the writing afford a basis for believing that the offered oral evidence rests on a real transaction." In Derden v. Morris, 247 So.2d 838, 839 (Miss. 1971), we held that a memorandum must satisfy three requirements to take a case outside the statute of frauds. The memorandum or writing must (a) evidence a contract for the sale of goods, (b) it must be signed by the party against whom enforcement is sought, and (c) it must specify a quantity. We observe that Mitchell's letter contains the statement Henderson made in closing her second telephone conversation with appellant, "O.K., we will take care of it." This language clearly signifies acceptance on the part of appellee notwithstanding any secret intentions Henderson failed to express to appellant. In so stating we do not adjudge Mitchell's letter as constituting a writing sufficient to render the contract enforceable under MCA § 75-2-201(1). We merely rule that the trial judge erred in sustaining appellee's motion to dismiss as it deprived appellant of the chance to develop his case in furtherance of his claim. This ruling is consistent with our holding in Crawler Parts, Inc. v. Hill, 441 So.2d 1357 (Miss. 1983), where we held it was error for the trial court to sustain the executrix's motion to strike the claim against Channel's estate. In that case we were of the opinion that the claimant was entitled to an evidentiary hearing so that a determination of the merits of appellee's statute of frauds defense could be made.
Hence, when the complaint and the letter attached as an exhibit are measured by the above-stated rules governing consideration of a 12(b)(6) motion, it is apparent that appellant stated a set of facts supporting a common law action for breach of contract which, if proved, entitled him to relief. Appellant alleged an oral contract, a reduction of the terms of the contract to writing, anticipatory breach and damage.
Furthermore, we observe that pursuant to MCA § 75-2-201(3)(b), appellant might be able to obtain an admission by appellee or one of its agents that a contract for sale was made. This particular subsection provides that the admission can be made by "pleading, testimony or otherwise in court ..." (Emphasis added). In this regard, it is conceivable that appellant could obtain testimony relating to the parties' course of dealing, if any, or the usage of trade observed in the filling of such seed orders.[3] This, then, is an alternative method which the appellant should be afforded the opportunity of utilizing to enforce the alleged contract and so constitutes an additional ground for ruling that the trial judge committed reversible error in sustaining appellee's motion to dismiss under 12(b)(6). Accordingly, we hold that the motion to dismiss should have been overruled.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.

*1379 APPENDIX A

January 11, 1982
Mr. Fairl Bowlin, Manager
Franklin County Cooperative
Post Office Box 156
Meadville, MS 39653
Dear Fairl:
This will confirm my telephone conversation with you on Friday afternoon, in which conversation I advised you that MFC Services (AAL) ("MFC") takes the position that no contract of purchase and sale has been made for the sale by MFC and the purchase by Franklin County Cooperative of 15,000 bushels of certified Davis soybean seed for delivery in April and May of this year. Accordingly, you are hereby advised that MFC has no intention to perform and will not perform the contract which you claim to have been made between MFC and your cooperative.
My discussions with Janet Henderson and Elmo Collum reflect the facts to be as follows:
On Thursday, January 7, 1982, you called MFC and due to the fact that Elmo Collum was not then available you talked to Janet, receiving quotations on various varieties of soybean seed. During that conversation, there was admittedly discussed by you and Janet the purchase by your cooperative and the sale by MFC of 15,000 bushels of certified soybean seed of the Davis variety for delivery in April or May at a price of $8.64 per bushel, f.o.b. the shipping point or a price of $9.04 per bushel delivered to your place of business.
You made a firm proposal to Janet for the purchase of the said seed on the terms stated and Janet advised you that "if there is any problem we will get back to you." While you may have not so understood the purpose of that statement by Janet, the statement was made by Janet with the intention of procuring the approval of her superiors (Elmo Collum or Rush Reed) before making a firm acceptance or rejection of your offer.
Following that initial telephone conversation, when Janet started to make a written memorandum of the terms of the proposed purchase and sale which she had discussed with you she saw that in the notes made by her during that telephone conversation she had written down 1,500 bushels rather than 15,000 bushels. While Janet was almost absolutely certain that 15,000 bushels was correct rather than 1,500 bushels as reflected by her notes, in order to avoid a possible mistake Janet called you to confirm the fact that you wanted 15,000 bushels rather than 1,500 bushels. You, of course, confirmed the fact that you wanted to purchase 15,000 bushels. According to Janet's best recollection, the second telephone conversation ended with her statement "O.K., we will take care of it."
While you may have construed that statement as an acceptance of your offer, it was not so intended by Janet, who, in the light of the prior telephone conversation, intended by the statement to convey to you the understanding that if she had no problem in procuring the approval of Elmo Collum or Rush Reed, MFC would accept the offer and if there was a problem she would get back in touch with you.
Janet did not discuss the matter with Elmo Collum until Friday morning and Elmo was not willing for MFC to accept the offer made by you due to the fact that MFC's total potential production of certified soybean seed of the Davis variety in MFC's own program is 24,000 bushels. Of that amount, MFC has already made firm contracts for the sale and delivery of 7,300 bushels, leaving MFC with a total of 16,700 potential bushels of certified Davis soybean seed which have not yet been cleaned nor bagged and have not passed the final certification test. MFC was, accordingly, not willing to accept your offer for there was no assurance that MFC would have 15,000 bushels of certified Davis seed to fill your order and for the further reason that if MFC accepted your offer MFC would then have no certified Davis seed to offer to its other member cooperatives. Elmo Collum, accordingly, advised you in his telephone conversation with you on Friday morning that MFC would not accept your offer. That advice was further confirmed to you *1380 by me in our telephone conversation on Friday afternoon.
I regret that the misunderstanding arose but, as stated, MFC denies that a contract for the purchase and sale of the seed was mutually agreed on and MFC will not fill your order therefor.
 Yours very truly,
 /s/ Milton H. Mitchell
 Milton H. Mitchell
MHM/ph
NOTES
[1] See text of letter, Appendix "A"
[2] § 75-2-201. Formal requirements; statute of frauds.

(1) Except as otherwise provided in this section, a contract for the sale of goods for the price of five hundred dollars ($500.00) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.
(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten (10) days after it is received.
(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable
(a) if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or
(b) if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of good admitted; or
(c) with respect to goods for which payment has been made and accepted or which have been received and accepted (Section 2-606) [§ 75-2-606].
[3] See MCA § 75-1-205.