**TRIANGLE MARKETING,
INC., Plaintiff,**

v.

**ACTION INDUSTRIES, INC.,
Defendant.**

**No. 85 C 8510.**

United States District Court,
N.D. Illinois, E.D.

March 13, 1986.

Earl L. Simon, Wolfe, Wolfe & Simon, Chicago, Ill., for plaintiff.

Susan A. Gromis, Titus, Marcus & Shapira, Pittsburgh, Pa., John Rothschild, Rothschild, Barry & Myers, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Triangle Marketing, Inc. ("Triangle") sues Action Industries, Inc. ("Action") for breach of a sale-of-goods contract. Action's Answer raises Uniform Commercial Code ("UCC") § 2–201 ("Section 2–201")[1] (the statute of frauds) as an affirmative defense. This Court's November 6, 1985 memorandum order (the "Order") directed Action to file a memorandum in support of its statute-of-frauds defense[2] because any such potentially dispositive matter should be addressed at the outset.

Action filed such a memorandum, moving under Fed.R.Civ.P. ("Rule") 12(c) for judgment on the pleadings, and that motion is now fully briefed. For the reasons stated in this memorandum opinion and order, the motion is granted.

### Facts[3]

Triangle purchases "close-out" merchandise for resale to discount retailers (¶ 2). It attends various trade shows to find such merchandise. On July 15, 1985 Action's representative, Kingsbridge Media and Marketing, Inc. ("Kingsbridge"),[4] exhibited an Action "cookie-shooter" to Triangle at a Chicago trade show (¶ 4). Nine days later Triangle issued two purchase orders, for a total of 25,800 cookie-shooters at $1.40 each, to Action care of Kingsbridge (¶ 6 and Exs. A–B). On August 1 Triangle received oral acceptance of its purchase orders from Kingsbridge and was advised about half the order would be shipped promptly from Columbus, Ohio (¶ 7).

One week later Robert Summer of Kingsbridge told Triangle that Action was refusing to ship the cookie-shooters and had sold them to a higher bidder (¶ 8). Triangle has been unable to find an alternative source of cookie-shooters (¶ 9) and (asserting a projected resale price of $3.00 each) figures its lost profits as $41,600 (¶ 11).[5]

### Statute of Frauds Analysis

Section 2–201 provides:

(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by

---

1. Neither party has attempted to resolve the choice-of-law issue that *Erie v. Tompkins* and its *Klaxon v. Stentor* offshoot impose on this Court. Complaint ¶¶ 1, 4 and 7 and Exs. A–B identify potential contacts of the transaction sued upon with Illinois, Pennsylvania, Ohio and California—all jurisdictions where UCC Article 2 is in effect. Standard practice under the various Uniform Laws treats the decisions of all jurisdictions that have enacted them as highly persuasive if not binding (see *Braden v. Bucyrus-Erie Co. (In re Halferty)*, 136 F.2d 640, 643 (7th Cir.1943) (Uniform Sales Act)), in order to promote the uniformity objectives of such statutes. In the absence of binding authority from any of the four jurisdictions, this opinion will similarly treat the issues raised as matters of general law (an approach suggested by Action Mem. 3 n. * and not opposed by Triangle).

2. Action also raised "fail[ure] to state a claim upon which relief can be granted" as an affirmative defense, but as the Order had anticipated, Action's memoranda indicate that defense has

no life independent of the statute-of-frauds claim.

3. Rule 12(c) principles require this Court to accept as true all facts alleged in the Complaint (*Republic Steel Corp. v. Pennsylvania Engineering Corp.*, 785 F.2d 174, 177–78 n. 2 (7th Cir. 1986)). That standard has a peculiar application to this case, which will be discussed later in the text. All Complaint citations will simply take the form "¶ —" or "Ex.—."

4. Each of ¶¶ 4, 7 and 8 refers to "Kingbridge Media and Marketing, Inc.," though the attached purchase orders (Exs. A–B) are directed to "Kings bridge." Action, which is presumably in closer relationship to that company, likewise refers (Ans. ¶ 7) to "Kings bridge," and this Court has adopted that as the more likely spelling. Of course nothing hangs on the difference.

5. That figure seems a bit off. If 25,800 cookie-shooters were purchased at $1.40 and resold at $3.00, the gross profit would be $41,280.

the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within 10 days after it is received.

(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable

\*　　\*　　\*　　\*　　\*　　\*

　　(b) if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted....

Action's basic argument is quite simple: Triangle has alleged a contract for the sale of goods for the price of $500 or more but has failed to allege the existence of a writing signed by Action or its agent to memorialize the terms or existence of that contract. Section 2–201(1) therefore operates to make Triangle's claim unenforceable.

■ Action Mem. 4 recognizes it and Triangle are "merchants" subject to Section 2–201(2). That provision would allow Action to be charged with the contents of a "writing in confirmation of the contract" even without having signed it, so long as it failed to give written notice of objection within 10 days. But here the only writing alleged is Triangle's purchase order, and that will not suffice for Section 2–201(2) purposes.

Section 2–201(2) says the writing must be "in confirmation of" the contract, and the Illinois Code Comment (Ill.Ann.Stat. ch. 26, ¶ 2–201 (Smith-Hurd Supp.1985)) says:

The written confirmation must be just that. An oral agreement must precede it and the writing must purport to state the terms of that oral agreement.

Thus the courts have uniformly held a Section 2–201(2) writing must *follow* formation of an oral agreement and must "indicate[ ] that the parties have already made a deal or reached an agreement" (*R.S. Bennett & Co. v. Economy Mechanical Industries, Inc.*, 606 F.2d 182, 186 (7th Cir.1979)). Otherwise the writing can hardly be called a "confirmation," as *E.Y. Gilkey & Sons, Inc. v. A–E Architectural Materials, Inc.*, 86 A.D.2d 970, 448 N.Y.S.2d 290, 291 (1982) (memorandum) pointed out:

[I]t is clear from the complaint and affidavits that the order of June 23, was not "in confirmation of" any prior oral agreement for the purchase of the windows. On the contrary, the complaint alleges that the contract sued on was made on June 23, 1980, the date of the purchase order. Plaintiff's affidavits refer to no oral agreement prior to June 23 but state that the alleged contract was formed by defendant's acceptance through its conduct and its acquiescence by failing to object to the June 23 order. Thus [Section 2–201(2) ] is not applicable and the alleged contract is unenforceable under [Section 2–201(1) ]....

To the identical effect, even though confirmations need not expressly state they are "confirmations," they must refer to an existing contractual agreement (*Rockland Industries, Inc. v. Frank Kasmir Associates*, 470 F.Supp. 1176, 1178 (N.D.Tex.1979)). See also *Perdue Farms, Inc. v. Motts, Inc. of Mississippi*, 459 F.Supp. 7, 16 (N.D.Miss. 1978) ("A writing cannot confirm an oral agreement reached after the writing was drafted"); *Trilco Terminal v. Prebilt Corp.*, 167 N.J.Super. 449, 400 A.2d 1237, 1240 (Ct.Law Div.1979) (writing must "indicate that a binding or completed transaction has been made").

Triangle has not even attempted to argue its purchase orders meet Section 2–201(2)'s "confirmation" requirement. Although mere labeling as a "purchase order" is not

dispositive if there were in fact an antecedent oral agreement (*Thomson Printing Machinery Co. v. B.F. Goodrich Co.,* 714 F.2d 744, 746–47 (7th Cir.1983)), the Complaint alleges no such antecedent agreement, and ¶ 7 describes the August 1 conversation as a "verbal [sic—should be 'oral'] acceptance" of the purchase orders. Clearly no agreement had been reached at the time Triangle sent the orders out.[6] Absent such prior agreement, the July 24 purchase orders were not "in confirmation of" anything, and Triangle cannot claim the benefit of Section 2–201(2)'s exception to the statute of frauds. To say otherwise would mean a seller is obliged to respond to every purchase order received out of the blue on pain of finding itself obliged to deliver on the order's terms.

■ Triangle instead points to Section 2–201(3)(b), the "judicial admission" exception. That provision permits enforcement of oral contracts where the party to be charged admits "in his pleading, testimony or otherwise in court" that a contract was made. Section 2–201(3)(b) prevents the evident injustice of denying enforcement to an oral contract admitted to the court (see Official Comment to Section 2–201, ¶ 7)—after all, the statute of frauds' main purpose is not to let people escape from commitments they *have* made, but rather to prevent people from becoming bound to agreements they *have not* made (see *Thomson Printing,* 714 F.2d at 746).

Section 2–201(3)(b) would dispel the statute-of-frauds bar here *if* Action were to have admitted the existence of the alleged contract. Triangle's memorandum provides lengthy extracts from cases support-

ing that evident truth. See, e.g., *URSA Farmers Cooperative Co. v. Trent,* 58 Ill. App.3d 930, 16 Ill.Dec. 348, 374 N.E.2d 1123 (4th Dist.1978). But Action has not admitted the contract—rather, its Answer ¶¶ 5–8 expressly deny the existence of any agreement between Action and Triangle or any "acceptance" by Kingsbridge.

■ Nevertheless Triangle Mem. 6 argues disposition of this case on the pleadings would "foreclose Plaintiff from taking depositions or testimony in open Court" amounting to Section 2–201(3)(b) admissions. That argument has little if any surface appeal, for any litigant facing dismissal might similarly argue trial is necessary to test whether people who have denied a fact in the pretrial stages will "flip-flop" at trial. Normally if one side says there was a contract and the other denies it, that creates a disputed fact issue making judgment on the pleadings or summary disposition inappropriate. But where the statute of frauds is applicable, that is not good enough: Plaintiff must affirmatively show the existence of an appropriate writing once the statute-of-frauds defense is made. Absent that, plaintiff must hope to elicit an admission.

Triangle Mem. 6 effectively says it is entitled to have this Court indulge that hope indefinitely.[7] And while that seems an absurd position, it has some surprising case-law support. *Garrison v. Piatt,* 113 Ga.App. 94, 147 S.E.2d 374 (1966) held Section 2–201(3)(b) bars a demurrer based on the statute of frauds. Two grounds were stated, the first of which was that allowing a demurrer is inconsistent with the lan-

---

**6.** Notably ¶ 5 says only that Triangle "examined" the cookie-shooters at the July 15 Chicago trade show. No contract-making conversation or discussion or negotiation with Kingsbridge is claimed.

**7.** From this point forward the analysis owes nothing to the efforts of the litigants. All the authorities supporting Triangle's view were uncovered not by its lawyers but by this Court's law clerk, C. Steven Tomashefsky, Esq. (Triangle having made a bald conclusory statement lacking a single supporting authority). Action's

non-Chicago counsel were no better. Their two-page Reply Brief simply denied the applicability of UCC § 2–201(3) without citing even one case or treatise, again foisting on this Court's clerk the job of finding all the authorities for this Court's review and analysis. If lawsuits were decided as law school exam papers were graded, the result here would be the same as that predicted by the late sportswriter Warren Brown after watching the wartime Chicago Cubs and Detroit Tigers warm up for the 1945 World Series: Both sides would lose.

guage of the statute (147 S.E.2d at 375–76) (emphasis in original):

> Since a contract, which is within the statute at the time of filing the petition or cross action, can become enforceable by admissions *only* in the case itself by the party charged, rather than admissions made outside the case prior to the filing of the petition or cross action,—it would, therefore, be contrary to the intention and purpose of the statutory change to permit the sustaining of a demurrer to a petition or cross action upon such a contract based on the ground that such petition or cross action shows upon its face that the contract is within the statute of frauds when it may become enforceable by acts occurring after the petition or cross action is filed.

In other words, Section 2–201(3)(b) would be an empty provision unless plaintiff were entitled to discovery and a trial to take advantage of it, because out-of-court admissions will not satisfy the statute (see *Lippold v. Beanblossom,* 23 Ill.App.3d 595, 597, 319 N.E.2d 548, 550 (4th Dist.1974) (admission in discovery deposition not filed with clerk of court does not meet Section 2–201(3)(b)'s "in court" requirement)).

Thus *Garrison* reads Section 2–201(3)(b) as a grant of power to obtain admissions, rather than as a prescription of the consequences when an admission happens to be made. Several other cases support that view: see, e.g., *M & W Farm Service Co. v. Callison,* 285 N.W.2d 271, 275–76 (Iowa 1979) (Section 2–201(3)(b) entitles plaintiff to "opportunity to prove the contract in court"); *Franklin County Cooperative v. MFC Services (A.A.L.),* 441 So.2d 1376, 1378 (Miss.1983) (same); *Reissman International Corp. v. J.S.O. Wood Products, Inc.,* 10 U.C.C.Rep.Serv. (Callaghan) 1165, 1167–68 (N.Y.Civ.Ct., N.Y. County 1972) (Section 2–201(3)(b) bars dismissal prior to discovery and trial); cf. *Dangerfield v. Markel,* 222 N.W.2d 373, 378 (N.D.1974) (defendant "may be required to admit or deny the oral agreement").

Other thoughtful courts have disagreed, holding Section 2–201(3)(b) is not an affirm-

ative license to obtain admissions where none have been made: see, e.g. *Simmons Oil Co. v. Bulk Sales Corp.,* 498 F.Supp. 457, 460 (D.N.J.1980) ("without merit" to contend defendant must file answer before Rule 12(b)(6) motion "on the chance it will admit the existence of the alleged contract"); *Boylan v. G.L. Morrow Co.,* 63 N.Y.2d 616, 479 N.Y.S.2d 499, 500, 468 N.E.2d 681, 682 (1984) (memorandum) (majority (in a 5–2 decision) holding nothing in UCC suggests motion to dismiss on statute-of-frauds grounds must await opportunity to elicit admissions, rejecting an extended dissent that urged the contrary); cf. *Presti v. Wilson,* 348 F.Supp. 543, 545 (E.D.N.Y. 1972) (denial of contract in answer and affidavit adequate to support summary judgment on statute-of-frauds grounds).

Those cases appear to pit logic against justice—an everyday fact of life in statute-of-frauds cases. But there is a line between preventing use of the statute to create injustice—the familiar case of using the statute of frauds to sanction fraud—and subjecting a party that denies the existence of a contract to extensive and expensive litigation in the hope that party will change its story. Corbin has suggested where that line ought to be drawn (2 *Corbin on Contracts* § 320, at 152–54 (1950) (footnotes omitted)):

> The rule most generally followed and the one it is believed should be followed, is that the defense of the statute must be made by specially pleading it; indeed, it might be well to require that not only must the defendant plead the statute and claim it as a defense, but he must also deny the making of the contract as alleged by the plaintiff. No doubt this is what the defendant usually does. It cannot give a court any great satisfaction to permit a defendant to escape from performing a contract he admits he has made. If, however, the defendant does not admit the making of a contract, it is the purpose of the statute to protect him from having to litigate the issue of fact, except in cases where the plaintiff can produce a written memorandum of the sort that the statute requires or other-

wise satisfy the statutory requirements. If the defendant admits the making of the oral contract sued on, he must specially plead the statute in order to use it as a defense. It should in justice then be no defense at all with respect to the contract so admitted in court, even though the admission is by oral statement in open court.

Corbin's analysis suggests two things:

1. Common-law practice permitted defendants to admit the existence of the contract and *still* obtain the "protection" of the statute of frauds in a triumph of pure formalism. *That* is a patent injustice, because the purpose of the statute is to protect those who did *not* make contracts from the perils of a trial based solely on parol evidence. Of course some defendants who did make contracts will be let off, but the statute (like most statutes) weighs the benefit of a prophylactic rule against the danger of occasional instances of injustice. On the other hand, to allow those who admit to a contract to use the statute of frauds as an insulator not only yields the "wrong" result on the facts—which can always happen in litigation—but it also allows the litigant to thumb his or her nose at the court.

2. As a technical matter, because the statute of frauds is writing-oriented, it might perhaps be argued defendant's oral statements to the court are simply parol evidence inadmissible to prove the contract. Corbin's approach (and Section 2–201(3)(b)) reject that argument. Party admissions (as for example Fed.R.Evid. 801(d)(2) recognizes) have reliability not ascribable to other sorts of testimony.

■ To read Section 2–201(3)(b) as the *Garrison* line of cases suggests is to go far down the road toward abolishing Sec-

tion 2–201(1) as a statute of frauds, putting defendant through the very litigation that the statute of frauds is supposed to cut off. Nothing indicates Section 2–201(3)(b) is intended to do anything more than prevent the sort of patent nose-thumbing Corbin identified. At least where (as here) defendant has answered and denied the existence of a contract, Section 2–201(3)(b) does not create an affirmative right for plaintiff to badger defendant through discovery and trial simply because of the possibility of obtaining an admission some time before proofs are closed. Nor does the Section's language—which is easily read as a description of consequences and less easily read as a grant of rights—compel that approach. This Court therefore rejects *Garrison*'s first rationale.[8]

*Garrison*'s other ground was derived from the special posture of a demurrer (147 S.E.2d at 376):

> It follows, therefore, that a petition upon such a contract which is valid in other respects is not demurrable because it shows on its face that it is within the statute of frauds; this for the reason that the demurrer admits the facts pleaded (for the purpose of the demurrer only) and for the demurrer, thus admitting the contract, is ineffective to set up the benefit of the statute of frauds.

Of course it is commonly said a demurrer—like a Rule 12(b)(6) or 12(c) motion—"admits" the allegations of the complaint. But those "admissions" are not really admissions in the factual sense at all. Parties who move to dismiss do not truly say:

> I admit the things you allege are true in fact, but I am entitled to judgment on the law.

They rather say something more like:

> Even if your allegations were true, I am entitled to judgment on the law.

---

8. That first rationale, of course, would apply equally to motions for summary judgment, for failure to obtain admissions during discovery might be remedied by testimony at trial. *Garrison* does not suggest how many bites at the apple a plaintiff is entitled to get, and that is a fault in its analysis. It should be noted Corbin's reviser, Professor Kaufman, endorses the view that summary judgment is inappropriate in stat-

ute-of-frauds cases (*Corbin on Contracts* § 320, at 368 (Kaufman 1984 Supp., Part 1)):

> until after the plaintiff has been able to conduct discovery sufficient to show that no admission of the contract will be made.

Professor Kaufman does not indicate why a defendant's answer denying the contract is not itself sufficient.

Thus a motion to dismiss "admits" the complaint's allegations only in a "technical" sense inadequate to meet Section 2–201(3)(b)'s admission requirement (*Anthony v. Tidwell*, 560 S.W.2d 908, 910 (Tenn. 1977) (dismissing complaint on statute-of-frauds grounds). See also *Boylan*, 479 N.Y.S.2d at 500, 468 N.E.2d at 682 (same); *Fox v. Overton*, 534 P.2d 679, 681 (Okl. 1975) (same).

Action's Rule 12(c) motion therefore should be fairly read as stating:

> Even supposing there were an oral contract (which we have denied in our answer), in the absence of a Section 2–201(2) writing this action is barred by Section 2–201(1).

And there is nothing exceptionable about that. Only if the Complaint had alleged Action had made an in-court admission would demurrer principles work in Triangle's favor, for then Action would in essence be saying:

> Even supposing we had made an in-court admission....

Consequently *Garrison*'s second rationale is also wholly insupportable and cannot bar dismissal or judgment on the pleadings.

Finally Triangle argues Kingsbridge must be factored into the equation, suggesting several tangled theories. None has merit.

Triangle first says the scope of Kingsbridge's authority as Action's agent is a fact question not resolvable on a Rule 12(c) motion. But Action does not deny Kingsbridge was its agent. Triangle Mem. 7 to the contrary, the Answer does not make factual allegations about the scope of Kingsbridge's authority: Rather *id.* ¶ 7 simply denies the facts in Triangle's version of the Triangle-Kingsbridge August 1 conversation and claims Kingsbridge said all purchase orders were subject to Action's approval. Thus Action disputes what was *said*, but it does not dispute Kingsbridge was its agent.

But the factual difference posed by Answer ¶ 7 is not material to resolution of Action's motion. Action has denied the existence of an oral contract. Statements indicating how it knows the contract was never formed, or its version of what happened instead, do not vitiate that denial.

Triangle next says it should have the opportunity to establish Kingsbridge had the "customary" authority of a sales representative to accept offers on Action's behalf, because (Triangle Mem. 6) (footnote omitted):

> [I]f King[s]bridge had the authority to advise Plaintiff [of acceptance] by usage of the trade under UCC 1–205, then the contract for the sale of the cookie shooters is enforceable against Defendant notwithstanding the requirements of UCC 2–201(1) and UCC 2–201(2).

Of course the act of an agent within the scope of his or her authority is the act of the principal, but the oral contract of an agent cannot be *more* enforceable than the oral contract of the principal. Nothing in Section 1–205—which merely defines "usage of trade"—suggests an agent's dealings are not equally subject to the statute of frauds. Section 2–202(a) does say "confirmatory memoranda" may be "explained or supplemented" by evidence of trade usage, but Triangle is just wrong in arguing (if that is its argument) trade usage trumps the need for any confirmatory memorandum.

Finally Triangle says an admission by Kingsbridge as Action's agent would suffice as a Section 2–201(3)(b) admission, and therefore judgment on the pleadings should be denied so that Triangle can try to get Kingsbridge's admission. That is no more than a rehash of the point this opinion has already treated at length, rejecting the *Garrison* line of cases in favor of the Corbin approach and the cases to the same effect.

### Conclusion

Action's motion for judgment on the pleadings is granted. This action is dismissed.