**DF ACTIVITIES CORPORATION, a Michigan corporation, Plaintiff–Appellant,**

v.

**Dorothea F. BROWN, Defendant–Appellee.**

No. 87–2712.

United States Court of Appeals, Seventh Circuit.

Argued April 12, 1988.

Decided July 7, 1988.

Rehearing Denied July 28, 1988.

Robert D. Kreisman, Kreisman & Ra-kich, Chicago, Ill., for plaintiff-appellant.

David William Porter, Stevenson, Rusin & Friedman, Chicago, Ill., for defendant-appellee.

Before POSNER, COFFEY, and FLAUM, Circuit Judges.

POSNER, Circuit Judge.

This appeal in a diversity breach of contract case raises an interesting question concerning the statute of frauds, in the context of a dispute over a chair of more than ordinary value. The plaintiff, DF Activities Corporation (owner of the Domino's pizza chain), is controlled by a passionate enthusiast for the work of Frank Lloyd Wright. The defendant, Dorothy Brown, a resident of Lake Forest (a suburb of Chicago) lived for many years in a house designed by Frank Lloyd Wright—the Willits House—and became the owner of a chair that Wright had designed, the Willits Chair. This is a stark, high-backed, uncomfortable-looking chair of distinguished design that DF wanted to add to its art collection. In September and October 1986, Sarah–Ann Briggs, DF's art director, negotiated with Dorothy Brown to buy the Willits Chair. DF contends—and Mrs. Brown denies—that she agreed in a phone conversation with Briggs on November 26 to sell the chair to DF for $60,000, payable in two equal installments, the first due on December 31 and the second on March 26. On December 3 Briggs wrote Brown a letter confirming the agreement, followed shortly by a check for $30,000. Two weeks later Brown returned the letter and the check with the following handwritten note at the bottom of the letter: "Since I did not hear from you until December and I spoke with you the middle of November, I have made other arrangements for the chair. It is no longer available for sale to you." Sometime later Brown sold the chair for $198,-000, precipitating this suit for the difference between the price at which the chair was sold and the contract price of $60,000. Brown moved under Fed.R.Civ.P. 12(b)(6) to dismiss the suit as barred by the statute of frauds in the Uniform Commercial Code. See UCC § 2–201. (The Code is, of course, in force in Illinois, and the substantive issues in this case are, all agree, governed by Illinois law.) Attached to the motion was Brown's affidavit that she had never agreed to sell the chair to DF or its representative, Briggs. The affidavit also denied any recollection of a conversation with Briggs on November 26, and was accompanied by both a letter from Brown to Briggs dated September 20 withdrawing an offer to sell the chair and a letter from Briggs to

Brown dated October 29 withdrawing DF's offer to buy the chair.

The district judge granted the motion to dismiss and dismissed the suit. DF appeals, contending that although a contract for a sale of goods at a price of $500 or more is subject to the statute of frauds, the (alleged) oral contract made on November 26 may be within the statutory exception for cases where "the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made." UCC § 2–201(3)(b). DF does not argue that Brown's handwritten note at the bottom of Briggs' letter is sufficient acknowledgment of a contract to bring the case within the exemption in section 2–201(1).

At first glance DF's case may seem quite hopeless. Far from admitting in her pleading, testimony, or otherwise in court that a contract for sale was made, Mrs. Brown denied under oath that a contract had been made. DF argues, however, that if it could depose her, maybe she would admit in her deposition that the affidavit was in error, that she had talked to Briggs on November 26, and that they had agreed to the sale of the chair on the terms contained in Briggs' letter of confirmation to her.

■ There is remarkably little authority on the precise question raised by this appeal—whether a sworn denial ends the case or the plaintiff may press on, and insist on discovery. In fact we have found no authority at the appellate level, state or federal. Many cases hold, it is true, that the defendant in a suit on an oral contract apparently made unenforceable by the statute of frauds cannot block discovery aimed at extracting an admission that the contract was made, simply by moving to dismiss the suit on the basis of the statute of frauds or by denying in the answer to the complaint that a contract had been made. See, e.g., *M & W Farm Service v. Callison*, 285 N.W.2d 271, 275–76 (Iowa 1979). There is also contrary authority, illustrated by *Boylan v. G.L. Morrow Co.*, 63 N.Y.2d 616, 618, 479 N.Y.S.2d 499, 500, 468 N.E.2d 681, 682 (1984). The clash of views is well discussed in *Triangle Marketing, Inc. v.*

*Action Industries, Inc.*, 630 F.Supp. 1578, 1581–83 (N.D.Ill.1986), which, in default of any guidance from Illinois courts, adopted the *Boylan* position. We need not take sides on the conflict. When there is a bare motion to dismiss, or an answer, with no evidentiary materials, the possibility remains a live one that, if asked under oath whether a contract had been made, the defendant would admit it had been. The only way to test the proposition is for the plaintiff to take the defendant's deposition, or, if there is no discovery, to call the defendant as an adverse witness at trial. But where as in this case the defendant swears in an affidavit that there was no contract, we see no point in keeping the lawsuit alive. Of course the defendant *may* blurt out an admission in a deposition, but this is hardly likely, especially since by doing so he may be admitting to having perjured himself in his affidavit. Stranger things have happened, but remote possibilities do not warrant subjecting the parties and the judiciary to proceedings almost certain to be futile.

■ A plaintiff cannot withstand summary judgment by arguing that although in pretrial discovery he has gathered no evidence of the defendant's liability, his luck may improve at trial. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490, 496 (7th Cir.1986); *Spellman v. Commissioner*, 845 F.2d 148, 151 (7th Cir.1988). The statement in a leading commercial law text that a defense based on the statute of fraud must always be determined at trial because the defendant might in cross-examination admit the making of the contract, see White & Summers, Handbook of the Law Under the Uniform Commercial Code 67 (1980), reflects a misunderstanding of the role of summary judgment; for the statement implies, contrary to modern practice, that a party unable to generate a genuine issue of fact at the summary judgment stage, because he has no evidence with which to contest an affidavit of his adversary, see Fed.R.Civ.P. 56(e), may nevertheless obtain a trial of the issue. He

may not. By the same token, a plaintiff in a suit on a contract within the statute of frauds should not be allowed to resist a motion to dismiss, backed by an affidavit that the defendant denies the contract was made, by arguing that his luck may improve in discovery. Just as summary judgment proceedings differ from trials, so the conditions of a deposition differ from the conditions in which an affidavit is prepared; affidavits in litigation are prepared by lawyers, and merely signed by affiants. Yet to allow an affiant to be deposed by opposing counsel would be to invite the unedifying form of discovery in which the examining lawyer tries to put words in the witness's mouth and construe them as admissions.

The history of the judicial-admission exception to the statute of frauds, well told in Stevens, *Ethics and the Statute of Frauds*, 37 Cornell L.Q. 355 (1952), reinforces our conclusion. The exception began with common-sense recognition that if the defendant admitted in a pleading that he had made a contract with the plaintiff, the purpose of the statute of frauds—protection against fraudulent or otherwise false contractual claims—was fullfilled. (The situation would be quite otherwise, of course, with an oral admission, for a plaintiff willing to testify falsely to the existence of a contract would be equally willing to testify falsely to the defendant's having admitted the existence of the contract.) Toward the end of the eighteenth century the courts began to reject the exception, fearing that it was an invitation to the defendant to perjure himself. Later the pendulum swung again, and the exception is now firmly established. The concern with perjury that caused the courts in the middle period to reject the exception supports the position taken by Mrs. Brown in this case. She has sworn under oath that she did not agree to sell the Willits Chair to DF. DF wants an opportunity to depose her in the hope that she can be induced to change her testimony. But if she changes her testimony this will be virtually an admission that she perjured herself in her affidavit (for it is hardly likely that her denial was based simply on a faulty recol-

lection). She is not likely to do this. What is possible is that her testimony will be sufficiently ambiguous to enable DF to argue that there should be still further factual investigation—perhaps a full-fledged trial at which Mrs. Brown will be questioned again about the existence of the contract.

With such possibilities for protraction, the statute of frauds becomes a defense of meager value. And yet it seems to us as it did to the framers of the Uniform Commercial Code that the statute of frauds serves an important purpose in a system such as ours that does not require that all contracts be in writing in order to be enforceable and that allows juries of lay persons to decide commercial cases. The methods of judicial factfinding do not distinguish unerringly between true and false testimony, and are in any event very expensive. People deserve some protection against the risks and costs of being hauled into court and accused of owing money on the basis of an unacknowledged promise. And being deposed is scarcely less unpleasant than being cross-examined—indeed, often it is more unpleasant, because the examining lawyer is not inhibited by the presence of a judge or jury who might resent hectoring tactics. The transcripts of depositions are often very ugly documents.

Some courts still allow the judicial-admission exception to be defeated by the defendant's simple denial, in a pleading, that there was a contract; this is the position well articulated in Judge Shadur's opinion in the *Triangle Marketing* case. To make the defendant repeat the denial under oath is already to erode the exception (as well as to create the invitation to perjury that so concerned the courts that rejected the judicial-admission exception altogether), for there is always the possibility, though a very small one, that the defendant might be charged with perjury. But, in any event, once the defendant has denied the contract under oath, the safety valve of section 2–201(3)(b) is closed. The chance that at a deposition the defendant might be badgered into withdrawing his denial is too remote to justify prolonging an effort to enforce an oral contract in the teeth of the

statute of frauds. If Dorothy Brown did agree on November 27 to sell the chair to DF at a bargain price, it behooved Briggs to get Brown's signature on the dotted line, posthaste.

AFFIRMED.

FLAUM, Circuit Judge, dissenting.

Because I disagree with the majority's holding that additional discovery is prohibited whenever a defendant raises a statute of frauds defense and submits a sworn denial that he or she formed an oral contract with the plaintiff, I respectfully dissent. Neither would I hold, however, that a plaintiff is automatically entitled to additional discovery in the face of a defendant's sworn denial that an agreement was reached. Rather, in my view district courts should have the authority to exercise their discretion to determine the limits of permissible discovery in these cases. This flexibility is particularly important where, as here, the defendant's affidavit does not contain a conclusive denial of contract formation.[1] While district courts have broad discretion in discovery matters, I believe the district court abused that discretion in the present case.

### I.

The purpose of the statute of frauds "is to protect a party from the fraudulent and perjurious claim of another that an oral contract was made and not to prevent an oral contract admittedly made from enforcement." *URSA Farmers Coop. Co. v. Trent,* 58 Ill.App.3d 930, 16 Ill.Dec. 348, 350, 374 N.E.2d 1123, 1125 (1978) (*citing*

*Cohn v. Fisher,* 118 N.J.Super. 286, 287 A.2d 222 (1972)). The statute is also designed to protect innocent parties from the expense of defending against allegations that they breached a contract that is not evidenced by a writing. As the majority notes, there is no Illinois case law conclusively deciding a plaintiff's right to obtain further discovery when a defendant denies the existence of an oral contract in a sworn affidavit. Relevant case law in other jurisdictions is split between the position that the majority adopts today and a rule permitting additional discovery (and in some cases full trials) in statute of frauds cases. *Compare, e.g., Garrison v. Piatt,* 113 Ga. App. 94, 147 S.E.2d 374 (1966); *M & W Farm Serv. Co. v. Callison,* 285 N.W.2d 271 (Iowa 1979); *Franklin County Coop. v. MFC Serv.,* 441 So.2d 1376 (Miss.1983); and *Duffee v. Judson,* 251 Pa.Super. 406, 380 A.2d 843 (1977) *with Triangle Mktg. Inc. v. Action Indus. Inc.,* 630 F.Supp. 1578 (N.D.Ill.1986); and *Boylan v. G.L. Morrow Co., Inc.,* 63 N.Y.2d 616, 468 N.E.2d 681, 479 N.Y.S.2d 499 (1984). *See also* Kaufman, *Corbin on Contracts* § 320, at 368 (Supp. Part 1 1984) (summary judgment inappropriate until plaintiff "has been able to conduct discovery sufficient to show that no admission of the contract will be made.").

### A.

Although it is difficult to give full effect to both the statute of frauds and the admissions exception thereto, that is what we must attempt to do.[2] In my view, these provisions can best be reconciled by allow-

---

**1.** When a defendant denies in his or her answer that an oral contract was formed, but does not attach an affidavit, a more compelling case exists for allowing the district court to determine when discovery should end.

**2.** In relevant part, § 2–201 of the Illinois Commercial Code provides that:

(1) Except as otherwise provided in this Section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom en-

forcement is sought or by his [or her] authorized agent or broker....

.    .    .    .    .

(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable

.    .    .    .    .

(b) if the party against whom enforcement is sought admits in his [or her] pleading, *testimony* or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted....

Ill.Rev.Stat. ch. 26, para. 2–201 (emphasis added).

ing district courts to exercise their discretion to determine when additional discovery is likely to be fruitful and when it is being sought just to improperly pursue a defendant who is clearly entitled to the protection of the statute of frauds.

If a denial is a complete bar to additional discovery, the exception to the statute of frauds for admissions made in a "pleading, *testimony* or otherwise in court that a contract for sale was made" would be rendered virtually meaningless. Ill.Rev.Stat. ch. 26, para. 2–201(3)(b) (emphasis added). In Illinois involuntary admissions can satisfy the admissions exception to the statute of frauds. *See URSA Farmers,* 58 Ill.App. 3d 930, 16 Ill.Dec. 348, 374 N.E.2d 1123. Such involuntary admissions will be almost impossible under the majority's rule because the plaintiff will never have an opportunity to examine the defendant in order to elicit an involuntary admission. Either the defendant will make a fatal admission in his or her affidavit and the statute of frauds exception will be satisfied without resort to the testimony component, or the defendant will deny the contract in his or her pleadings[3] and the case will be dismissed before a testimonial admission is possible. A blanket rule prohibiting any further discovery once the defendant denies under oath that a contract was formed is therefore too inflexible.

Similarly, I would not adopt a rule that requires district courts to allow additional discovery in every one of these cases. I would leave the decision to the discretion of the district judge. In cases where a defendant does not explicitly deny under oath that an oral contract was reached, or where there is some indication that the statute of frauds is being used to perpetrate a fraud, it would be permissible to allow the plaintiff to question the defendant under oath to ensure that he or she personally denies that the parties formed an oral contract. This does not mean, however, that summary judgment is never appropriate when the statute of frauds is raised as an affirmative defense. If a defendant who conditionally denies contract formation in his or her pleadings or affidavit specifically denies that an agreement was reached in a deposition, summary judgment might well be appropriate at that stage of the litigation. A simple denial in an affidavit, however, should not trigger foreclosure of further discovery in every case.

### B.

In the present case I think the district court abused its discretion by disallowing any additional discovery once Brown filed her motion to dismiss and accompanying affidavit. The majority argues that it would be futile for DF Activities Corporation ("DF") to take Brown's deposition. Brown is unlikely to admit any facts from which a reasonable trier of fact could conclude that an oral contract was formed because, in the face of her affidavit, such admissions would leave her exposed to perjury charges. In my view, this overstates the content of Brown's affidavit. While Brown denied that any oral or written agreement was reached in both her answer and motion to dismiss, such a blanket denial is curiously missing from her affidavit. Rather, in her affidavit Brown stated only that she did not accept any offer from Domino's Farms or Sarah Briggs for the sale of the Willits chair and that she does not recall having a conversation with Sarah Briggs on November 26, 1988. Deposing Brown therefore would not necessarily be a futile effort. It is possible that under questioning during a deposition Brown would remember the November 26 conversation during which Briggs claims she and Brown reached an agreement for the sale of the chair. Although any convenient prior memory lapse might be viewed with suspicion if a deposition elicited additional information, it is highly unlikely that it would lead to perjury charges. On the facts of this case, I believe the district court abused its discretion when it refused to allow DF to take Brown's deposition.

---

**3.** The statute of frauds is an affirmative defense. *Shugan v. Colonial View Manor,* 107 Ill.App.3d 458, 63 Ill.Dec. 82, 87, 437 N.E.2d 731, 736 (1982). Under Federal Rule of Civil Procedure 12(b) and § 2–613 of the Illinois Code of Civil Procedure, Ill.Rev.Stat. ch. 110, para. 2–613, it must be raised in the defendant's answer to the complaint.

## II.

I share the majority's concern that one of the purposes of the statute of frauds is to protect litigants from the cost of defending breach of contract claims based on alleged agreements that are not supported by written documentation. The statute of frauds, however, contains a specific exception for cases in which a party admits in a pleading, testimony, or otherwise in court that an oral contract was reached, and that provision must be given some effect. The testimonial admissions provision would be virtually meaningless if a district court could never exercise its discretion to permit additional discovery in the face of a defendant's sworn denial in an affidavit.

Because in my view the district court abused its discretion when it prohibited further discovery, I would remand this case to the district court with instructions to permit discovery to continue at least to the point where DF is given an opportunity to depose Brown. If Brown then denies under oath during her deposition that any oral contract was made, summary judgment might well be appropriate at that time.