**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**B. Francis SAUL, III and Peter David Garvy, Defendants.**

**No. 90 C 2633.**

United States District Court, N.D. Illinois, E.D.

Oct. 12, 1990.

Mary H. Weiss, S.E.C., Chicago, Ill., Yuri B. Zelinsky, John Courtade, S.E.C., Washington, D.C., for plaintiff.

Gordon B. Nash, Jr., Andrew C. Spiropoulos, Gardner, Carton & Douglas, Chicago, Ill., R. Kenly Webster, B. Scott Custer, Jr., C. Elizabeth Espin, Shaw, Pittman, Potts & Trowbridge, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

## I. INTRODUCTION

The Securities and Exchange Commission ("SEC") charges in this action that defendant B. Francis Saul, III ("Saul III") disclosed non-public information about a publicly-traded stock which he obtained from his father, B. Francis Saul, II ("Saul II"), to defendant Peter David Garvy ("Garvy") and that Garvy and others traded in this stock to their substantial profit on the basis of this information. In its four-count complaint, the SEC characterizes the alleged conduct of Saul III and Garvy as contrary to §§ 10(b) and 14(e) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78n(e), and SEC Rules 10b–5 and 14e–3 promulgated thereunder. Pending before the Court is the defendants' motion for a protective order precluding the SEC from taking the depositions of five individuals whose testimony was taken in the course of the administrative investigation which preceded this suit. For the reasons set forth below, that motion is denied.

## II. FACTS

For purposes of the pending motion, the Court has assumed the facts alleged in the SEC's complaint to be true. The Court has also gleaned additional background information concerning the SEC's administrative investigation from the memoranda which the parties have filed in connection with the motion.

Over the Memorial Day weekend in 1988, Saul II revealed to Saul III that he was about to take private the B.F. Saul Real Estate Investment Trust (the "Trust"), an unincorporated business trust which Saul II controlled, by making a tender offer for the 770,000 shares of publicly-traded Trust stock which were then outstanding. Shortly thereafter, Saul III disclosed this information to his friend Garvy. In June of 1988, Garvy purchased 4,500 shares of Trust stock. On Garvy's recommendation, his father, Eugene Garvy, purchased an additional 2,700 shares of Trust stock. Betsy Perk, who attended the same university as Garvy and was his friend, also acted upon Garvy's recommendation and purchased 1,100 shares of Trust stock. The purchases initiated by Garvy, his father, and Perk accounted for a substantial portion of the trading in Trust stock in June, 1988, and caused the price of Trust stock to rise markedly. All of the purchases were completed as of June 21, 1988. On the following day, the proposed tender offer was publicly announced, and the price of the Trust stock closed that day at $25 per share, three dollars higher than the closing price on June 21, 1988. Garvy, his father, and Perk proceeded to liquidate their shares of Trust stock, yielding a collective profit of more than $60,000.

The SEC began its investigation into the facts of this case in July of 1988, when attorneys for Saul II alerted the SEC to the unusual trading activity in Trust stock which had taken place in June. Over the next 18 months, the SEC took the testimony of some twenty-four witnesses, including the five at issue here: Saul II, Saul III, Eugene Garvy, Garvy, and Perk. SEC staff ultimately recommended that the Commission file suit against Saul III and Garvy. The SEC adopted that recommendation, and filed this suit in May, 1990.

## III. ANALYSIS

Defendants argue that the SEC should be precluded from taking the depositions of Saul III and his father, Garvy and his

father, and Perk because the SEC exhausted all discovery relevant to this case during the administrative investigation, and consequently, the depositions of these five individuals would be duplicative and should therefore be precluded to spare the defendants from undue burden and expense. As set forth below, the Court disagrees.

Neither the defendants nor the SEC have cited any authority which is controlling on the matter of limiting discovery in a civil suit like this one based upon the administrative investigation which preceded it. Rule 26(b)(1) of the Federal Rules of Civil Procedure directs the Court to impose limits upon discovery which is "unreasonably cumulative or duplicative" or "unduly burdensome or expensive", and ample authority recognizes a court's duty to invoke this rule when the discovery taken or proposed within the confines of a case exceeds reasonable limits. *See generally Marrese v. American Academy of Orthopaedic Surgeons*, 726 F.2d 1150, 1162 (7th Cir.1984) (en banc), *rev'd on other grounds*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); Fed.R.Civ.P. 26 (Advisory Committee Note, 1983 Amendment). However, few cases grapple with the notion of limiting discovery in an action based upon discovery conducted in a prior proceeding. Defendants rely upon several cases in which courts have imposed discovery restrictions in this context, but none of them is particularly apposite here.

In *New Sanitary Towel Supply, Inc. v. Consolidated Laundries Corp.*, 24 F.R.D. 186, 189 (S.D.N.Y.1959), the district court did limit the taking of depositions in light of a prior criminal proceeding which concerned the same underlying events. However, the court did so primarily on the basis of detailed factual findings which had been rendered in the criminal proceeding, reasoning that in light of these findings and the extensive courtroom examination upon which they were based, the proposed depositions could serve only to vex and harass the witnesses. *Id.* Moreover, the court restricted the depositions only to the extent that they would cover those matters on which the criminal court had already made specific findings. *Id.* In this case, no con-

clusive findings have been rendered by the SEC; the prior administrative investigation culminated solely in the decision to initiate a civil suit.

In *Finkelstein v. Boylan*, 33 F.Supp. 657 (S.D.N.Y.1940), the district court ordered that the depositions proposed by the plaintiff be stayed pending the trial of a closely related state court suit. The court did so primarily because the outcome of the related suit might have some bearing upon prosecution of the case before it. *Id.* at 659. There is no comparable circumstance here. Moreover, the court in *Finkelstein* flatly rejected the notion that discovery should be foreclosed altogether on the ground that the relevant issues had already been thoroughly examined in the discovery taken in the related suit. *Id.* The court reasoned that absent some showing of bad faith or impropriety, the plaintiff should be permitted to avail himself of the rights accorded to him by the Rules of Federal Procedure. *Id.* Thus, *Finkelstein* actually lends support to the SEC's position that it is entitled to proceed with discovery in this action even though that discovery may cover some of the same ground as did its administrative investigation.

*DF Activities Corp. v. Brown*, 851 F.2d 920 (7th Cir.1988), has no application here. In that case, the plaintiff sued the defendant for breach of an oral contract for the sale of a valuable chair. The defendant raised the statute of frauds as a defense. An exception to the statute of frauds applies in instances where the defendant has admitted in pleadings or testimony that a contract for the sale of a good existed, and it was this exception upon which the plaintiff attempted to rely. However, the defendant filed a motion to dismiss the case supported by an affidavit in which she denied having entered into an oral agreement with the plaintiff. Based upon that affidavit, the district court determined that there would be no point in allowing the plaintiff to take discovery, and dismissed the case. The court of appeals affirmed in a divided opinion. *See id.* at 922. In the court's view, because the exception to the statute of frauds rested upon an admission from

the defendant that there was an oral contract between the parties, and the defendant had stated in a sworn affidavit that no such agreement existed, there was no reasonable basis for permitting discovery to go forward, because the best the plaintiff could hope for was that the defendant would depart from her affidavit and admit in a deposition that there had in fact been an oral agreement. *Id.* at 923. This possibility struck the court as unlikely, given that the defendant would be admitting implicitly that she had perjured herself in her affidavit. *Id.* The court further opined that permitting discovery to go forward in these circumstances would undermine the purpose of the statute of frauds:

> With such possibilities for protraction, the statute of frauds becomes a defense of meager value.... People deserve some protection against the risks and costs of being hauled into court and accused of owing money on the basis of an unacknowledged promise.

*Id.* Thus, once the defendant had precluded use of the acknowledged agreement exception by stating under oath that there had been no contract between the parties, the slim possibility that the defendant might be "badgered" into changing her position in a deposition was not sufficient to give the plaintiff license to proceed with discovery. *Id.* at 923–24.

The defendants' attempt to portray the circumstances of this case as comparable to those in *DF Activities* is unconvincing. The defendants argue, without contradiction from the SEC, that the central question of fact in this case is whether Saul III actually disclosed anything about the forthcoming tender offer to Garvy. They further argue that because Saul III and Garvy have already denied in the course of the SEC's administrative investigation that Saul III made such a disclosure, there is no point in allowing Saul III, Garvy, or any of the other three witnesses in question to be deposed now in the hope that one of them will change their story. However, unlike *DF Activities,* this case does not rest upon an admission or denial of a critical fact by Saul III or Garvy. Both of these witnesses may consistently deny that an improper disclosure took place, and yet the jury might conclude otherwise based upon the totality of the SEC's evidence. Under these circumstances, the SEC is entitled to take the depositions of anyone who may have knowledge of what was or was not disclosed to Garvy.

Thus, there is no authority which suggests that it is appropriate to limit the SEC's right to take discovery based upon the extent of its previous investigation into the facts underlying its case, and the Court is not inclined to set such a precedent here. The parties agree that the SEC's administrative investigation in this case was thorough, and there appears to be little dispute that the proposed depositions will overlap to some degree with the testimony taken in the course of that investigation. Whatever overlap there might be, however, is not sufficient to deprive the SEC of the discovery to which it is otherwise plainly entitled under the Federal Rules of Civil Procedure, absent some showing of bad faith, harassment, or legal impropriety. *See Finkelstein, supra,* 33 F.Supp. at 659. Defendants place much emphasis on the fact that the witnesses whom the SEC now seeks to depose have already been examined thoroughly, in the presence of counsel for all parties, and that the material questions of fact are not complex and have long been apparent to the SEC. Nonetheless, the Court finds considerable merit in the SEC's contention that once it has completed its investigation and filed suit, it is entitled to review its investigation and avail itself of its discovery rights in order to prepare its case for trial. Whatever inquiries the agency posed in the course of its investigation were framed in the context of ascertaining whether or not to press charges against the defendants. The SEC's motives and concerns in that setting may not be dramatically different from those which currently underlie its preparation for trial; nonetheless, the contexts are sufficiently different to merit further discovery once the charges have been made and the parties are at issue. In determining whether or not to bring suit, the SEC typically must sift through information and take testimo-

ny which ultimately proves immaterial. The fact that the SEC examined twenty-four witnesses in the course of its investigation and now seeks to depose only five confirms that this was the case here. Once the complaint has been filed and the defendants have answered, the issues requiring resolution have been clarified, and all parties must be afforded the opportunity to conduct discovery and prepare for trial with those issues in mind. The Court will not foreclose the SEC from availing itself of this right by precluding certain depositions altogether, or by attempting to limit the scope of these depositions.

Not only would the protective order which defendants propose interfere with the SEC's discovery rights, it would have the effect of imbuing the investigations of government agencies with the kind of formality and binding effect characteristic of full-blown litigation. Such a result would be at odds with the considerable leeway such agencies traditionally have enjoyed in their investigations. This Court has previously recognized that regulatory agencies must be afforded substantial room to conduct administrative inquiries free from many of the restraints which govern once formal charges have been filed. *See Collins v. Commodity Futures Trading Commission,* 737 F.Supp. 1467, 1480, 1482–83, 1485 (N.D.Ill.1990) (Rovner, J.). *Cf. United States v. Morton Salt Co.,* 338 U.S. 632, 642, 70 S.Ct. 357, 363, 94 L.Ed. 401 (1950) (agency "can investigate merely on the suspicion that the law is being violated, or even just because it wants assurance that it is not"). Attaching preclusive effect to the SEC's pre-filing investigation would raise the stakes of administrative inquiries toward an end which courts have expressly sought to avoid—transforming regulatory investigations into trials. *Cf. Hannah v. Larche,* 363 U.S. 420, 446, 80 S.Ct. 1502, 1517, 4 L.Ed.2d 1307 (1960) ("The Federal Trade Commission could not conduct an efficient investigation if persons being investigated were permitted to convert the investigation into a trial.")

The Court is not unmindful that the five depositions which the SEC proposes to take will burden defendants to some degree.

Yet, the same is true in any case, and however clear the defendants may believe the issues to be and however eager they may be to press on to trial does not supply a reason to deprive the SEC of the discovery to which it is entitled under the Rules of Civil Procedure. As the Court has noted, the defendants have made no showing that the SEC is motivated to seek the depositions in question by bad faith, harassment, or impropriety. The witnesses whom the SEC seeks to depose are quite plainly material, and five depositions are unlikely to impose a burden which is not commensurate with the nature and scope of the case. Accordingly, the Court finds the SEC's proposal to take these depositions reasonable.

## IV. CONCLUSION

For the reasons set forth above, defendants' motion for a protective order barring the plaintiff from taking the depositions of B. Francis Saul II, B. Francis Saul III, Peter David Garvy, Eugene Garvy, and Betsy Perk is denied.