**M & W FARM SERVICE COMPANY,**
Appellee,

v.

**Ken CALLISON d/b/a Winterset Hybrid, Appellant.**

**No. 62515.**

Supreme Court of Iowa.

Nov. 14, 1979.

G. Stephen Walters of Webster, Jordan, Oliver & Walters, Winterset, for appellant.

William F. Fanter of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for appellee.

Considered by LeGRAND, P. J., and REES, HARRIS, ALLBEE, and McGIVERIN, JJ.

ALLBEE, Justice.

Defendant Ken Callison, d/b/a Winterset Hybrid, aggrieved by an interlocutory ruling on a motion to adjudicate law points, sought and was granted this appeal in advance of final judgment. *See* Iowa R.App.P. 2.

The appeal arises out of this pleading background. Plaintiff M & W Service Company brought action against Callison on an open account, demanding $7030.92 alleged to be due for items supplied, including petroleum, LP gas, drier gas and feed. Callison responded not only by answer, in which he denied liability for the money demanded, but also with a counterclaim pleaded in two divisions. The first division alleged an oral agreement between the parties under which M & W agreed both to sell Callison LP gas for use in drying seed corn and to rent to Callison four LP gas tanks for storage of the LP gas for so long as he needed them for seed corn drying during the fall of 1976. Callison further alleged that on October 11, 1976, M & W, without permission, notice or warning, wrongfully removed one of the tanks without replacing it, and in so doing breached the express or implied terms of the oral agreement. The result of this breach, according to the counterclaim, was Callison's inability to properly dry a considerable amount of seed corn, leaving it unfit for seed and diminished in value. For this Callison claimed loss in seed corn value of $79,009.92, damages of $25,000 to his seed corn business, and exemplary damages of $208,000 for M & W's "willful and reckless disregard for [his] rights."

The counterclaim's second division asserted the same damage items and sums for each, and pleaded a tort claim against M & W. This claim was predicated upon M & W's negligent removal of the gas tank without permission, notice, warning or prompt replacement upon Callison's demand.

M & W, by reply, admitted that it removed one of the gas tanks but denied Callison's allegations of breach of an oral agreement and tortious conduct. In addition, the reply, and an amendment to it, stated that M & W did not rent or lease any gas tanks to Callison, but merely provided the tanks for temporary use; that Callison was charged by M & W only for "goods," including LP gas, at an agreed upon price; and that M & W neither contemplated nor made a charge for use of the gas tanks. M & W also pleaded, as a bar to enforcement of Callison's claims founded upon an oral agreement, section 554.2201, The Code (the Uniform Commercial Code Statute of Frauds).

Later, M & W filed a motion and an amended motion to adjudicate law points, asking the dismissal of Callison's counterclaims. It is the propriety of the ruling sustaining the amended motion upon which this decision turns.

The motion raised three grounds for dismissal. The gist of the first is that the oral agreements pleaded by both parties involve the sale of goods for the price of five hundred dollars or more and, consequently, neither agreement is enforceable due to the UCC Statute of Frauds unless an exception to the statute is applicable. *See* § 554.2201, The Code. M & W further states that its action, however, falls within the exceptions contained in section 554.2201(3)(c) (goods for which payment has been made and accepted or which have been received and accepted), but that no exception applies which could permit enforcement of the oral agreement alleged in Callison's counterclaim.

The remaining two motion grounds are urged in the alternative and each is directed at the tort action pleaded in the second division of the counterclaim. Essentially, one ground was that the only duty which Callison asserted that M & W owed him was a contractual duty, which is not cognizable by the law of torts. Accordingly, whether

or not there existed an oral contract which plaintiff breached, no tort could have been committed. The other ground was that even a duty of care inappropriately premised on the alleged oral contract would be extinguished by the Statute of Frauds bar to the contract's enforcement.

As alluded to earlier, trial court sustained each ground of M & W's motion. In the process, it also ruled that M & W's open account action was maintainable because it came within the exceptions of section 554.-2201(3)(c). The latter ruling is not questioned on this appeal. Thus, we now consider only the propriety of the court's challenged rulings.

■ I. A motion for separate adjudication of law points, authorized by Iowa R.Civ.P. 105, permits only the consideration of questions of law which arise from uncontroverted pleadings. No facts established outside the pleadings may be examined; no evidence may be taken to either support or resist the motion. *IMT Insurance Co. v. Myer,* 283 N.W.2d 316, 318 (Iowa 1979). The motion is appropriate only when the material facts are undisputed. *Woodburn v. Northwestern Bell Telephone Co.,* 275 N.W.2d 403, 406 (Iowa 1979).

M & W's key assertion is that Callison's claims against M & W are based on a contract which the pleadings indisputably reveal was unwritten and therefore unenforceable. In its view, any controverted facts relating to the alleged oral contract are immaterial because of the contract's unenforceability. Hence, it contends that an adjudication by trial court was appropriately based on the undisputed material facts.

■ What these assertions ignore is that the remaining disputed facts raise the possible applicability of at least two exemptions from the UCC Statute of Frauds. The first is that, if a true lease agreement did exist, as alleged by Callison but denied by M & W, as a lease it would be exempt from UCC provisions, including the Statute of Frauds. *See, e. g., DeKalb Agresearch, Inc. v. Abbott,* 391 F.Supp. 152, 153–54 (N.D.Ala. 1974), *aff'd,* 511 F.2d 1162 (5th Cir. 1975) (per curiam). This is because the UCC applies only to contracts for the present or future sale of goods, which involves the passing of title. § 554.2106, The Code. *See generally* J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 2–2, at 45 (1972).[1]

The second possible exemption raised by the disputed pleadings is that of a mixed contract for goods and, in predominant part, services. The coverage of mixed contracts under the UCC is discussed in *Bonebrake v. Cox,* 499 F.2d 951 (8th Cir. 1974). In *Bonebrake* written contracts for the sale and installation of bowling alley equipment were made between a dealer in equipment and the owners of a bowling alley damaged by fire. The court construed those contracts to be mixed contracts for goods and services, concluding that clearly the contracts were for the replacement of equipment destroyed by fire, thus involving goods as defined and covered by the UCC. To determine whether a mixed contract should be covered as a sale of goods under the UCC, that court said the test is not whether the contract is mixed but "whether [its] predominant factor, [its] thrust, [its] purpose, reasonably stated, is the rendition of service, with goods incidentally involved . . . or is a transaction of sale, with labor incidentally involved . . .." *Id.* at 960; *cf. Ranger Construction Co. v. Dixie Floor Co.,* 433 F.Supp. 442 (D.S.C.1977) (pre-

---

1. We should not be understood, however, to be saying that every commercial transaction which is characterized or labeled as a lease agreement can never come within UCC provisions. *See, e. g., Transcontinental Refrigeration Co. v. Figgins,* Mont., 585 P.2d 1301, 1305 (1978); *Industralease v. Enterprises, Inc.,* 58 App.Div.2d 482, 487, 396 N.Y.S.2d 427, 430 (1977). *See also Walter E. Heeler & Co. v. Convalescent Home of the First Church of De-* *liverance,* 49 Ill.App.3d 213, 218–19, 8 Ill.Dec. 823, 827, 365 N.E.2d 1285, 1289 (1977) (certain provisions of article 2 may be applied by analogy to equipment leases). Whether a true lease agreement exists, and not a mere label as such, may raise questions of law or fact. But these potential questions are not before us under the pleadings in this case, and we need not, and do not, consider them further today.

dominant purpose of the contract for the installation of resilient flooring was for the performance of services with the sale of goods necessary to such services being incidental, thereby exempting UCC applicability).

M & W contended, as previously indicated, that the principal object of the parties' transaction was the sale of goods, and that the providing of gas tanks was only an incidental service of supplying LP gas. Consequently, it argues that, as a matter of law, all of the transactions are governed by the UCC. Trial court agreed, relying primarily upon *Bonebrake*.

■ We do not quarrel with either the *Bonebrake* test or result, but that case does not control the result in this one for several reasons. First, in this case there is no written instrument to construe and determine, as a matter of law, its legal effect. *See Brammer v. Allied Mutual Insurance Co.*, 182 N.W.2d 169, 172 (Iowa 1970). Secondly, as already pointed out, the pleadings here are not uncontroverted. Callison's counterclaim contradicts the assertions in M & W's reply that the tanks were supplied without additional charge, merely as an incident to the sale of LP gas. Also, trial court's ruling erroneously rested in part upon an exhibit. M & W's exhibit B, attached to its petition and consisting of copies of monthly statements of Callison's account, was referred to as part of the basis for trial court's conclusion that the gas tanks "were incidentally supplied to facilitate the sale of LP gas," thus "merely incidental to the sale of gas and . . . therefore the principle object was the *sale of goods* exceeding $500.00 which must be settled according to the provisions of the Iowa Uniform Commercial Code." But Callison's answer denied M & W's allegation pertaining to exhibit B, thereby controverting that allegation too.

■ II. Even if no question regarding the possible applicability of the previously mentioned exemptions from the UCC were raised by the pleadings here, we would still hold that the ruling on the motion to adjudicate law points was inappropriate. The ruling ignored the implications of section 554.2201(3)(b). That section provides that "if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made," an unwritten contract which is valid in other respects is enforceable. By ruling that the Statute of Frauds rendered unenforceable Callison's alleged oral agreement for the rental of tanks, trial court foreclosed Callison from the opportunity of eliciting an admission by M & W of the contract in court, on cross-examination or otherwise. He was denied the right implied by section 554.2201(3)(b) to prove the applicability of an exception to the UCC Statute of Frauds through events which might yet occur in court.

■ This basis for our decision is dictated by *Johnson v. Ward*, 265 N.W.2d 746, 747–48 (Iowa 1978), which held that the Statute of Frauds provided in section 622.32, The Code, may not be raised by a motion to dismiss. The rationale for that holding was that the Statute of Frauds is simply a rule of evidence, which governs only the manner of proving a contract, not its validity. Thus, the party resisting the Statute should be given the opportunity to prove the alleged contract in two statutorily recognized ways: by the opposing party's failure to deny the existence of the contract in its responsive pleading and by the opposing party's emitting oral evidence of the contract. That rationale is equally applicable to cases in which the UCC Statute of Frauds is asserted. *See, e. g., Garrison v. Piatt*, 113 Ga.App. 94, 147 S.E.2d 374 (1966) (denying demurrer); *Reissman International Corp. v. J. S. O. Wood Products, Inc.*, 10 U.C.C.Rep. 1165 (N.Y.Civ.Ct.1972) (denying summary judgment before discovery); *Duffee v. Judson*, 251 Pa.Super. 406, 414, 380 A.2d 843, 847–48 (1977) (denying preliminary objection in nature of demurrer); J. White & R. Summers, *supra* § 2–5, at 57–58; *cf. Meylor v. Brown*, 281 N.W.2d 632, 634–35 (Iowa 1979) (promissory estoppel may defeat both UCC and general Statute of Frauds as both are only rules of evidence). *But see Presti v. Wilson*, 348

F.Supp. 543 (E.D.N.Y.1972) (granting summary judgment motion); *Lippold v. Beanblossom*, 23 Ill.App.3d 595, 319 N.E.2d 548 (1974) (granting motion to dismiss). *See generally* Annot., 88 A.L.R.3d 416, 423–24 (1978). In this case, Callison was afforded the first opportunity to prove the contract because M & W did file a reply to his counterclaim. He has not, however, been afforded the opportunity to prove the contract in court.[2]

III. Turning, finally, to the tortious conduct alleged in the second division of the counterclaim, again we are satisfied that those pleadings raise claims which must await evidence before they can be decided. M & W would limit Callison's right of recovery at most to breach of contract. While ordinarily a breach of contract is not a tort, the contract, nevertheless, may establish some duty for which a violation may be tortious, *Rice v. Sioux City Memorial Park Cemetery*, 245 Iowa 147, 162, 60 N.W.2d 110, 119 (1953), or the neglect of which an action *ex delicto* will lie, *Duke v. Clark*, 267 N.W.2d 63, 68 (Iowa 1978). *See generally* 57 Am.Jur.2d *Negligence* § 47 (1971); 65 C.J.S. *Negligence* § 4(6) (1966).[3] The question of whether a contract establishes a duty of care cognizable by the law of torts is a question of law for the court to decide. *Porter v. Iowa Power & Light Co.*, 217 N.W.2d 221, 228 (Iowa 1974). However, the court is in no position to make that determination unless the material provisions of the entire contract are before it. *See id.* at 228. Consequently, that determination would be inappropriate as an adjudication of law points if, as in this case, the contract to be construed is oral and its existence, let alone its terms, is disputed by the parties' pleadings.

In summary, we do not believe that one can conclude as a matter of law, from the pleadings alone, that there was no agreement to rent the gas tanks, or that the tanks were supplied without additional charge, merely as an incident to the sale of LP gas. Nor can one determine from the pleadings a right to, or the reasonableness of, the removal of one tank. These are fighting issues. These issues can be resolved only after the opportunity for presentation of evidence has been given.

REVERSED AND REMANDED.

All Justices concur except HARRIS, J., who concurs in divisions I and III and in the result.

---

**2.** Although there is a conflict among jurisdictions as to whether the exception applies to admissions of the adverse party which are involuntarily induced, *see Cox v. Cox,* 292 Ala. 106, 111 n.3, 289 So.2d 609, 613 (1974) (collecting authorities), this court has held that it does, *see Packwood Elevator Co. v. Heisdorffer,* 260 N.W.2d 543, 546 (Iowa 1977); *Quad County Grain, Inc. v. Poe,* 202 N.W.2d 118, 120 (Iowa 1972).

**3.** Although not specifically challenged by M & W, Callison's punitive damage claim will be dependent upon his establishing that M & W's alleged breach constituted an intentional tort, committed with legal malice. Breach of contract alone will not suffice to warrant submission of the punitive damage claim. *Pogge v. Fullerton Lumber Co.,* 277 N.W.2d 916, 918–20 (Iowa 1979).